Next case this morning, your honor, is number 17-1900, Kirk Lassend v. United States. Good morning, Mr. Pickett. Good morning, your honors. My name is Karen Pickett. I represent the petitioner appellant, Kirk Lassend. As your honors know, Mr. Lassend was sentenced under the ACCA to 235 months after the district court found a number of previous convictions qualified as violent felonies. This occurred before Johnson 2, and Mr. Lassend ultimately brought these Johnson habeas claims. I'd like to focus today on the district court found now that there are three qualifying violent felonies. I'd like to focus on the two New York felonies that he found were violent felonies under the ACCA. I think to start with, your honor, the case, the crime I think that's the clearest, that it's not a violent felony under the ACCA, is the New York assault conviction. As your honors know, under Johnson, the government has to show that a conviction has as an element the attempted use or threatened use of physical force against the person of another. And we know from Johnson 1 that physical force has been defined as violent force, force capable of causing physical pain or injury to another. This case is exactly, or this crime, this statute, a criminal statute, is exactly the same statute that all three of your honors examined in the White v. Lynch case. And in that case, Judge Criatta, writing for the panel, found that the ACCA requires that there be an element of the use of force. So similar to that case, what we have here is the defendant can have the intent to cause physical injury and the results can happen, but the government in New York doesn't have to prove that the defendant used any force actually, let alone violent force under Johnson. Wait a minute, we're under subsection 7, right, of the New York crime? Yes. And that applies to assault by someone in a correctional institution who is a prisoner who intends to cause physical injury or harm, and then in fact does it. So I'm not quite clear if you're making the argument that it is possible to violate that statute by analogy to that New York case you cited in your reply brief, which doesn't seem to apply to subsection 7, or that subsection 7 itself in a correctional institution does not require use of physical violence. Your Honor, I believe that the elements are the same as the Connecticut statute, except that the government has to actually approve an additional element, which is that the defendant is confined to a correctional institute, but that does nothing to link the intent and the result with the use of force. It's the same problem, regardless of where the crime happens. Okay, so how does a prisoner who intends to cause bodily injury to somebody, and in fact does it within the context of the correctional institution, and he's been convicted of a crime that puts him there, how does he violate the statute without any use of physical force? I just wonder if there's a case that says that that can be done under that subsection. Well, I agree that that was also the argument that was made in White v. Lynch. There's no case here, so how can it be? And Judge Kayaba said the absence of a case doesn't mean it can't happen. If you look at the elements of the case, the government does not have to prove that force was used. A prisoner, for example, could intend that his bunkmate fall on his head and put a banana peel on the floor, but that wouldn't qualify as the use of force under Johnson. Why isn't that the use of force under Castleman? Well, because, Your Honor, because Castleman doesn't apply. That's also something that was stated in White v. Lynch, and has also been stated in Fourth Circuit case law. But Castleman was specific to the federal crime that they were examining. You've got a nice example. You've got the mother and the child case, where it's a very good example of how without using no force, just entropy itself will result in injury. But in the confines of a prison, it's hard to posit such a relationship as you'd have outside a prison between a mother and a child. So I, too, like Judge Lynch, am having some difficulty of thinking of an example where some act of employment, even tripping people or putting something on the floor someone will trip over, isn't necessarily involved. Well, for example, another example I can think of, I don't spend a lot of time in prison, but another example I can think of is perhaps a roommate that has certain privileges can do things for other prisoners. Can bring them food, can bring them medicine. I've seen that with certain clients. They work up the chain, and they get certain privileges, and they have a duty to bring medicine to their roommate, and they don't do it. That would be an omission as opposed to an act of force. Pardon me. Your client pled guilty to this crime in New York. Yes, he did. And the district court, looking at the Shepard documents, looked at the second count of the indictment to which he pled guilty, which reads, with the intent to cause injury to another person, Willie Wells did cause injury to Willie Wells. That's what he pled guilty to. Right. What does that do to your argument? But there's nothing in that indictment or the statute. Of course, you look at the statute itself under the categorical approach, because now we know the government's argued that he fits within – because under the assault statute, there's, I think, seven different – no, there's multiple different subsections. And the government was trying to prove that my client fit into number seven. I argue, of course, in my brief, which I won't re-argue here, that the government didn't meet that point of proof. But assuming that they did, reading either the statute or the indictment or anything else, there's no requirement that the government prove that there was an active force, let alone a violent force, in order for my client to be convicted. I just don't see really how – the government tries to distinguish White v. Lynch. I just don't see how it happens, just because my client happens to be in a prison setting as opposed to – Well, that doesn't say that merely if you can possibly think of some scenario that the absence of a prosecution doesn't defeat that scenario from being dispositive. It's still – we still have to have some plausibility. And so we're having trouble with this. I guess the best one you've given is if someone had a duty to bring medicine to a bunkmate, but I take it there's no case, anything like that. I don't have any cases besides the cases I cited in New York that were outside the prison bunk. Can I just ask one more question? Sure. Not to beat a dead horse, but doesn't the indictment read with subsection 7, is exactly what subsection 7 is covering? That's what – what happens if you read the plea colloquy. Forget about that. I'm talking about the indictment that we should try to play to. Right. That indictment itself matches the language of section 7. Isn't that enough? Well, I argue that it's not because actually when the client goes to court, he ends up pleading to attempted assault, and it's different. And we don't have the docket sheet to show whether the indictment was amended, but I take it the district court judge has found that this was close enough. Thank you. I'm sorry. I see I'm running out of time, so I just wanted to briefly talk about the armed robbery. And I understand the government's point, which is under New York law, either my client or somebody else had to display a weapon. But as you all know, the New York courts have defined display as being a toothbrush in a pocket, a hand in a pocket, and, you know, recently in the Starks case, this court said having a knife in your pocket isn't enough. And I think, you know, the word display may mean different things to different people, and the government's saying, well, that, you know, a victim could be reasonably in fear. But, again, coming back to what Johnson 1 requires, that has to be capable of producing injury. Does the New York statute require that to be convicted that you need to know or intend or even be aware that your accomplice is going to pull out a gun? Absolutely not. It's a strict liability. So it's bifurcated the mens rea from the person who's now up on an ACCA offense. That person was convicted of something that didn't require as an element that he had the mens rea, but did require as an element that someone else he was associated with had it. That's exactly true, Your Honor. And I think that's the problem. Just quickly, that's the problem with the Stuckey case in the Second Circuit. They're taking the mens rea for the robbery piece and then saying, well, that suffices for this piece, this other piece. But I believe you also wrote this case. I think it was either Fish or Wendleton. I'm sorry. But basically it said you have to have the intent to use force. And that's not required under the New York armed robbery statute. If you don't have any other questions. You want us to break with the Second Circuit? Well, I think so, because I think the case law here is different. I think if you read Starks and you read Fish and you read Wendleton, we have said, and I think other circuits support this. In fact, I think in the case it said we have 10 other circuits that say, you know, And so you're welcome. Thank you, Your Honor. Is it Quinn? Good morning. Good morning, Judge Troy. And may it please the Court, Mark Quinlivan on behalf of the United States. Let me talk briefly about the assault conviction first, and then I'll move to the first-degree robbery conviction. I think the body of the argument this morning is regarding the claim that was raised for the first time in the defendant's reply brief. And that's that one can be convicted under subsection 7 of the second-degree assault statute under an omission theory. And briefly, there are four reasons why that claim fails. First, it was raised for the first time in the reply brief, and as this Court has long said, that argument is weight. Second, the only case that's cited for that proposition, the Gladden case, is actually a case in which the Court dismisses an indictment because the grand jury had not been properly presented with the elements of the crime. I'm not aware of any case, based on my brief review, in which a court has applied an omission theory with respect to the second-degree assault statute generally. But even second beside that, we're, of course, talking about subsection 7 here. And under New York law, there can only be, or liability can only be, applied where there is a legal duty to act under an omission theory. And there's no case, nor am I aware of any case, either in New York or elsewhere, in which an inmate incarcerated in a correctional facility has been held to have a legal duty to act vis-a-vis, whether it be another inmate or to an employee at the correctional facility. One can certainly understand, in the example in the Gladden case, a mother and a child, where the law might impose a legal duty to act in that instance. But I would suggest that in here, where we're talking about an inmate incarcerated in a correctional facility, where there's no case imposing such a legal duty, we really are talking about what the Supreme Court has said, just a mere theoretical possibility, rather than a realistic possibility that it would apply in that instance. And even if all that were not enough, we did cite, and you'll find it, it's in the string site on page 41, footnote 9 of our brief, it's the Ontiveros case from the Tenth Circuit. And the Tenth Circuit squarely addressed this very question. And harmonizing Johnson 1 and Castleman, the Tenth Circuit found that, given that in Castleman, a battery can be committed under the common law, even in the absence or under an omission theory, and given that the court in Castleman said that it is impossible to commit a battery without the use of physical force. The only logical conclusion is that the, and it was a different state, but a second degree of staunch statute there, would satisfy the force clause of the ACCA. Again, I don't think... We have to defer to the Supreme Court on physics as well as law. Yes, we do. Obviously wrong. I'm sorry, Judge, I missed that last. We have to presume that the only way you can cause an injury is with the use of force? Is that what you're saying? No, what I'm saying is that what Castleman said... Is only under the common law? No, Castleman was interpreting a common law, was talking about common law battery, which included, which can include the omission to act. And the court said, notwithstanding that, it was impossible to commit physical harm without the use of physical force. Now, I acknowledge that... I assure you, you don't want a broad ruling rejecting any possible articulation of the omission theory. No, and it all leads me back, Judge Lynch, to my first point, which is, this was raised... I would think the government would not want us to rely on a waiver, which was your first theory, which would leave the issue open for future cases, but would prefer that we just resolve this. Well, I think you can... Judge, how do we resolve it? Well, I don't think... I think you absolutely can resolve it on the basis of a waiver on the one hand, or, on the other hand, on the basis that there is no... that an omission theory of liability would be applied under subsection 7 of the statute. I certainly do not think this court needs to reach the ultimate question, which is whether liability under an omission theory constitutes the use of physical force under Castleman. I acknowledge that the case cited in my friend's reply brief in the Third Circuit, the unpublished decision in Oliver, cuts against what the Tenth Circuit found in Ontiveros. I think this court would be loath to weigh in where there's an emerging circuit split where there hasn't been full briefing on the question. But yes, Judge Lynch, I think this court, in its discretion... I wasn't asking you about your confidence level. Let's move on. On the First Degree Robbery Statute, on this claim, there's been no dispute that it's a divisible statute and that the defendant was convicted under subsection 4 of the statute. I think that the threshold argument that displaying a weapon doesn't constitute the threatened use of physical force, that claim fails under this court's decision in Ellison, and it also fails under the other cases we cited in our brief. The Fifth Circuit in Ovalle-Trunn, the Sixth Circuit in Gallo, all of which hold that when you take an action, display a weapon in a manner for which a person objectively believes you're threatening harm, that satisfies the force clause of the ACCA. And, of course, it was in a different context, but in Ellison, the question was federal armed bank robbery. What about, it seems this really comes down to, this case pivots, at least in my view, on the use of force requirement under Leocal, and we've got this odd situation I've never seen before where an element of the crime is the use of force, but an element of the crime is not the use of force by the particular defendant who is now before us. So we have someone who's been adjudicated guilty under a state offense that did not require any finding at all that he either used force or intended or was even aware that his colleague was going to use it, and the standard of sort of vicarious attribution doesn't even rise to the level that would satisfy Rosalind for aiding or abetting under federal law. So it doesn't seem to be like the type of violent crime that Congress would have in mind in ACCA, at least I pose that as a question, not a statement. Yes, and Judge Kaye, an answer I would say, I go back to the text of the statute itself, because when Congress passed the ACCA in 1984, it was presumably aware of theories of accomplice liability in crimes such as felony murder, and Congress clearly or quite easily could have passed the statute that said a violent felony is a crime in which the defendant attempted to use or threatened to use physical force against the person of another. Instead, Congress passed a statute that said a violent felony is an offense that has as an element the attempted use or threatened use of physical force against another. Sure, but doesn't it seem odd to you that if we go that route, we would have a regime where the U.S. Supreme Court has said someone who negligently uses force to cause injury to another, no for ACCA. Virtually all the circuits have said anyone who even recklessly uses force, recklessly uses it and causes injury, no for ACCA. But then this person who didn't use any force at all himself, who didn't negligently fail to be aware or recklessly fail to be aware is in effect held strictly liable for the use of force by a colleague. That seems, it doesn't fit. I understand Your Honor's concern, but under the categorical approach, I just go back to the words of the statute. What Congress enacted was a statute that said a crime that has as an element the use, attempted use or threatened use of physical force. The first degree robbery statute is satisfied in this context. As the Second Circuit said, the defendant under Leopold, of course, has to have a threshold intent level to engage in the underlying crime. And when an accomplice threatens the use of physical force against the person of another in the course of committing the crime, the statutory elements are satisfied. I suppose there might be some risk of if we do not go in the direction the government is urging of sort of the tail wagging the dog of some undercutting of the substantive law of accomplice liability. You're saying Congress was aware of that substantive law when it passed this statute and that the language it chose meant to accommodate that law. I think that's exactly what I just made. You're absolutely right because, again, I think we always start with the text of the statute, and Congress could quite easily have enacted a statute that foreclosed the possibility of accomplice liability. Under your theory, you realize that if a state had a law that said, for example, a parent is strictly liable if a minor goes out and commits a violent crime involving the use of force, then under your analysis, that parent having been convicted under that state law would be considered a violent criminal under ACCA, triggering the ACCA minimum. If all three of those offenses. Well, I don't think so, J.C. Chiara, because the parent would have to have committed where the intent to commit some threshold crime. Okay, so throw in that the parent was intended to go out on a joyride with the child or something like that. Well, I would have to look at it. In the instance of the case, Judge Chiara, I think your question ultimately goes to, I think, did Congress intend the categorical approach? Because in applying the categorical approach, we look to the least culpable conduct, and that is the theory of accomplice liability here. And in applying that approach, we then look under the least culpable conduct, does it satisfy the elements of the statute? Don't we also look at Congress as using the word violent? The obvious purpose of all of this is that it wants to identify certain violent people who it wants in prison longer, but it realizes it doesn't want to have jury trials to do the earlier offense, so we're going to use convictions, and so that gets us into the categorical approach at that point. But this is all in the context in which we're trying to identify people who have the sort of lea calamans rea. Absolutely, and I think felony murder, Judge Chiara, is a classic example. If Congress had wanted to enact a statute that would have foreclosed the most obvious candidate for accomplice liability of felony murder, once again, it could have enacted a statute that said a crime that has an element that the defendant used, attempted to use, or threatened to use physical force. So ultimately, we go back to the language that Congress employed in the pass of voice, which does not foreclose this possibility, and this crime does have as an element the threatened use of physical force against the person. Are there cases where it is felony murder that is used as an ACCA predicate offense? Judge, the only other case that I have found outside of this specific context is an unpublished Eighth Circuit decision. I'll send you Rule 28, but it's United States v. Young. You send a letter? Absolutely. Thank you. If the Court has no other questions. Thank you. Thank you, Your Honor.